We're going to move now to Appeal 24-1914. This is United States v. Taylor. We'll begin with our oral argument on behalf of the appellant, Mr. Hessler. May it please the Court, my name is Daniel Hessler. I represent Andrei Taylor. I will start with a cross-reference. The issue is, with the findings that were made, could the uncharged murder on September 2nd be considered relevant conduct to the charged gun possession on September 19th? The cross-reference in 2K2.1 and its notes tell us that earlier crimes can be considered relevant conduct to later gun possession only if the defendant used or possessed the charged firearm in the previous events. In this case, the only findings that were made were that Mr. Taylor culpably participated in a murder on September 2nd, that he knew firearms would be involved generally, and that someone used the charged Glock. The District Court decided this qualified as using or possessing that particular Glock because it concluded that anyone who participated on September 2nd was responsible for any guns used, and the September 19th Glock was one of those guns. One of the problems with that reasoning is that it involves using relevant conduct principles in multiple steps in an odd order. The examples used in Application Note 14 all implicitly involve a first finding that the defendant possessed the charged firearm on a previous occasion, then a finding that he committed some crime with that firearm, which would make him accountable for the previous crime in his present case because they're part of the same course of conduct. Again, here the District Court first found that Mr. Taylor participated in the previous crime, then went the other direction and used aiding and abetting liability to hold him accountable for the charged Glock despite the absence of any evidence of use or possession, then used that accountability to make the murder part of the same conduct as the later gun possession. Text of the cross-reference requires a finding of use or possession to get from one offense to the other. It's important to remember that the reach of legal accountability is broader than what is considered use or possession. Let me give you an example. Let's use a hypothetical. Somebody who helps out at a drug dealer. Steve's a lookout. His job is to keep an eye on a stash house that he doesn't have the keys to. Is he guilty of participating in the drug crime? Of course he is. If he knowingly participated and tried to make the crime succeed, he's guilty on an aiding and abetting basis. Now, what if he said, I never possessed those drugs and the jury believed him? Would that make him not guilty? It wouldn't. Possession isn't required. You can have accountability without possession. Let's go back to the cross-reference. 2K2.1 requires that the defendant used or possessed a charged firearm in the other offense in order for that offense to become relevant conduct to a later gun possession charge. That choice of language is a deliberate choice for the Sentencing Commission to narrow the reach of relevant conduct principles. This is also consistent with the language from the enacting commentary to Note 14E, which described the relevant conduct rules as one restriction on the reach of the cross-reference, and Note 14E as a further restriction. That same enacting commentary mentioned a reason for this, being that the cross-reference can expose a defendant to the highest level of any crime he may have committed. In other words, they were worried about exactly this situation. And all of this is consistent with the examples the parties have tossed back and forth, both in the district court and the briefs here. We looked at the weapons enhancement in the drug guideline, 2D1.1b1, where there's a two-level enhancement. If a dangerous weapon, including a firearm, was possessed, the Sentencing Commission there used the passive voice signaling accountability that would occur regardless of who did the possessing. But counsel, can't this possession be constructive possession? And why wouldn't the district court's findings on, I believe it was the September 2nd, the date of the murder, why wouldn't that amount to constructive possession of the weapon? Constructive possession is defined as knowingly having the power and intention at a given time to exercise dominion or control over an object. I'm just taking that out of the circuit's jury instructions. Knowledge that somebody else was going to use a firearm without any evidence of a particular firearm, a specific one, doesn't mean that Andre Taylor had any control over that Glock on September 2nd. There's no evidence that he ever touched that Glock until September 19th, the 20 seconds that we know about. So constructive possession doesn't get you anywhere. Again, I was going back to the idea of the enhancement in the drug guidelines uses a passive voice construction to say it's broad accountability. And in contrast, the safety valve provision of 2D1.1B18, they word it, it says that the defendant can be eligible for the safety valve reduction if the defendant did not possess a firearm or other dangerous weapon, or induce another participant to do so in connection with the offense. And this course case law says that Pinkerton liability doesn't apply to that one. And the reason is because of the wording that the Sentencing Commission chose. Mr. Hesler, time is short and I did want to touch on the reckless endangerment question, if you don't mind. How attenuated does the presence of the police and third parties need to be to avoid creating reckless endangerment? I think it is a factual question, as this court has said in things like United States v. Lard. But, again, there has to be something. There was no pursuit. There was no sight. He was never seen with a gun. No one was around when he tossed it. It landed in a very isolated spot, and the gun had safety features designed to keep it from going off. But he didn't know any of that. Well, there was no evidence that he... There was no evidence. Actually, there's no evidence that he did or didn't. And it's the government's burden on that. Arguably, he did know that he was alone on the street. As I read Judge Tharp's sentencing transcript, he goes into quite a bit of detail with regard to findings of fact on this particular section, correct? He does. And if you're asking about the fact that he didn't know, I would describe that as error because it's saying the defendant didn't prove that it didn't apply. It wasn't the defendant's burden to prove anything. And you were present at the sentencing hearing, so you heard it all happen. I was counsel. All right. Thank you. Would you like to reserve the remainder of your time? Yes. Very good. Thank you, Mr. Hessler. We'll now move to the argument on behalf of the appellee, Mr. Zano. Mr. Zano. May it please the court. I'm Mary Zenner, and I'm arguing on behalf of the United States. I'd like to start with the cross-reference. Judge Tharp correctly applied the cross-reference based on the language in 2K2.1C and the relevant conduct language that's in the application note or that's incorporated by the application note. What's the limit to that? When would a defendant's conduct be sufficiently separated from accomplice or acting in a betting liability to avoid being implicated in those acts? I think on that you look to the relevant conduct guidelines, and I would note in the application note there's a subsection B, I believe, is the scope. And it talks about some of the outer limits. And really the question is what's reasonably foreseeable? Was this joint criminal activity? Did the defendant know what was going to happen, what the plan was? And was it reasonably foreseeable that, for this case, guns would be used? Here, Judge Tharp correctly found that it was reasonably foreseeable that guns would be used. Some of the language he used at the sentencing was that this was premeditated, preplanned, and it was inconceivable that anyone who was in those two cars would not know that guns were going to be used to commit this murder. And that's the reason that he found that Andre Taylor, the defendant, was liable under agency principles for using and possessing the Glock and the other guns used. And it's because it was reasonably foreseeable to him that guns were going to be used. The evidence presented at sentencing showed that they drove around for 25 minutes hunting for their victim. The evidence showed that they stopped in tandem with two cars, and three men got out and gunned down the victim. Everyone in those two cars knew that guns were going to be used. It wasn't a surprise. And so when Mr. Taylor was caught with that same gun a little over two weeks later and charged with possessing that gun, it was reasonable to hold him accountable via the cross-reference for using that gun in a murder. And I think Mr. Hessler misunderstands the application note, which is entirely focused on it being the same gun. The changes after 2002 to this cross-reference and to the application note are entirely focused on it being the same gun. It doesn't deal with the agency principles and relevant conduct. It makes clear that the gun in the charge offense has to be the same gun in the cross-reference offense. And we have that here. The Glock that Mr. Taylor was caught with is the same Glock that was used to murder Cadavian Jones. Mr. Hessler also claims, and he makes this argument of the active and passive voice, and it focuses on the distinction. Some of the guidelines enhancements say, you know, defendant possessed a gun. Some say a gun was possessed. But the relevant conduct language makes clear that agency principles are appropriate for the cross-reference at issue here. And I'd also note that one of the enhancements that actually has the passive voice, that's 2D1.1B12. That's a drug enhancement for maintaining a stash house. That has active voice. It says – or excuse me, it has passive voice. Let me get my active, passive correct. Oh, so that has active voice. It says defendant maintained a stash house. But I would note that case law that this court has issued that's triplet actually holds defendants liable based on agency theories for maintaining a stash house. And that specific argument that defendant's making about this distinction between passive and active voice was actually rejected by the Sixth Circuit in the Rich case that we said in our brief. In that case, defendant made the same argument regarding the stash house enhancement. It said this has active voice. It says the defendant has to maintain a stash house. You can't hold them accountable based on agency principles, and the court rejected that. It said we look to relevant conduct, and relevant conduct allows for agency liability. And that's appropriate here. And I think the case law we cited shows that courts regularly apply enhancements based on agency liability. They regularly apply gun enhancements under 2D1.1, 2B3.1. And in the Aduwo case that we cited, which is under the Eleventh Circuit, they applied the cross-reference that's directly at issue here to a defendant who did not actually possess the gun, but engaged in joint criminal activity there, a robbery, and her co-conspirator had a gun. That's the same thing that happened here. Mr. Taylor knew that guns were going to be possessed. He engaged in a joint criminal undertaking, the murder of Jones, and he knew the guns were going to be used, and he's accountable for those guns. So the cross-reference was correctly applied here based on Judge Tharp's findings at the sentencing. I next want to turn to the reckless endangerment. Again, the facts here that came out at sentencing were very clear. Defendant ran when he saw police. He was carrying a gun when he ran. He tossed that gun over a high fence from which he couldn't see to the other side, and he did all those things recklessly. Now, the court's finding on that enhancement was correct, and it's well supported by Seventh Circuit case law, specifically the Brooks case. In Brooks, the defendant ran from police. It wasn't clear that police could actually see the gun when he pulled it out, but he was clearly running from police, and he dropped that gun in a residential area. Here, Mr. Taylor threw the gun over a fence into a residential backyard. And I think a lot of those videos were submitted to the court. It was clear that that residence was occupied. It was a backyard that had patio furniture. It was a busy street, and within seconds, neighbors and the occupants of that house had come out of the house, and they're the ones that provided the video that led to Mr. Taylor being arrested. So I take issue with Mr. Hessler's claim that there weren't people around and that someone couldn't have been hurt. When you run from police with a gun in a crowded residential neighborhood and throw it, you are reckless, and you are endangering human life. That gun could have discharged, a child could have found it, or police could have seen him with the gun. And as Your Honor said, Mr. Taylor did not know whether police could see him or not. He didn't know who was in that yard, and he didn't know whether the gun was going to discharge. And that's textbook reckless behavior. The final thing I would say is that regardless of whether the technical guidelines applications were correct, Judge Tharp's sentence was reasonable. And any error he made in applying those guidelines was harmless, and he made that clear in his sentencing. He stated that even if he had made error on the specific guidelines at issue, Mr. Taylor's involvement in the murder was so dangerous that it warranted the sentence that Judge Tharp ultimately gave. It's very similar to the Snyder case that we cited where the district court inoculated his sentence by explaining that the dangerousness of the defendant's involvement in a murder warranted a significant sentence regardless of the guidelines. The same result governs here if the court determines that the guidelines were not appropriately applied. Thank you. Thank you, Mr. Zanner. We'll now move back, Mr. Hester, to you for rebuttal argument. The government starts their discussion of the relevant cross-reference with and sticks with simply the discussion of the relevant conduct guideline 1B1.3. I suggest you have to start from the 2K2.1 and the cross-reference in its language and the note that it's got, because the note and its enacting talent commentary say it was written to address the controversy about what the reach of the cross-reference was. And so just going to relevant conduct principles in general doesn't get you there. I think you have to go through that first. And then the government starts talking about it being reasonably foreseeable that anybody who was involved in the murder would have known about guns. We agree with that. And if we were starting from this being a murder charge, then the fact that the guns were reasonably foreseeable would make anybody involved accountable for any gun. However, if you look at the relevant conduct guideline, it says, the reasonable foreseeability language says, in the case of a jointly undertaken criminal activity, things that are done by multiple people, the murder may have been done by multiple people, but what Mr. Taylor was charged and convicted of and pled guilty to was gun possession on September 19th. That was a one-person thing. There was nobody else charged. There was nobody else alleged in any of this to have had that gun. In fact, the government kind of fought that in the district court. Thank you, Mr. Hessler. Thank you. And thank you, Mr. Zanner. The case will be taken under revisement. Thank you.